UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RILEY,<br>CDCR # E-48875,<br><br>         Plaintiff,<br><br>v.<br><br>L. VIZCARRA, Correctional Officer;<br>S. ALVAREZ, Correctional Officer;<br>J. LUNA, Correctional Lieutenant,<br><br>         Defendants. | Case No.: 3:18-cv-02911-JAH-BLM<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**(ECF No. 19)** |

  Shannon Riley ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, brought this action under 42 U.S.C. Section 1983 alleging that two correctional officers, Vizcarra and Alvarez, and a lieutenant, Luna (collectively, "Defendants") at the Richard J. Donovan Correctional Facility ("RJD") violated his First, Eighth, and Fourteenth Amendment rights in two incidents that took place in February and March 2018. (*See* First Am. Compl., ECF No. 17, at 10.)

  Defendants move to dismiss the First and Fourteenth Amendment claims in

Plaintiff's First Amended Complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Mot., ECF No. 19.) Plaintiff filed an Opposition to Defendants' Motion, and Defendants did not file a reply. (Opp'n, ECF No. 22.)

For the reasons set forth more fully below Defendants' Motion is **GRANTED** with leave to amend.

## I. Plaintiff's Allegations

Plaintiff was housed at RJD in 2018. (First Am. Compl. ¶ 3.) On February 18, 2018, during a visit with his girlfriend, Plaintiff went to use the restroom. (*Id.* ¶ 10.) To access the inmate restrooms, Plaintiff knocked on a door at the back of the visiting area, which one of the Defendants, Officer Vizcarra, opened for him. (*Id.* ¶ 12.) As required by prison regulations, Plaintiff removed all but his underwear and began to use the toilet before Vizcarra stopped him, ordering him to "strip out," bend over, spread his buttocks, squat, and cough. (*Id.* ¶¶ 14-16.) Plaintiff was "caught off guard" by the order and replied, "I'm not leaving, I just need to use the restroom." (*See id.* ¶¶ 17-18.) Vizcarra repeated his order to strip out, and Plaintiff asked "for what? I'm just about to use the restroom." (*Id.* ¶¶ 19-20.) In response, Vizcarra became "extremely aggressive," standing face-to-face with Plaintiff, yelling, and otherwise making Plaintiff feel threatened. (*See id.* ¶¶ 21-25.) Plaintiff slowly backed away, complied with Vizcarra's order, and left the area. (*See id.* ¶ 25.)

Following this incident, Plaintiff filed a staff complaint against Vizcarra requesting various personnel actions be taken, including reassigning Vizcarra or instructing him to

---

[1] Plaintiff requested and was granted leave to amend his original Complaint in response to Defendants' initial motion to dismiss on July 1, 2019. (*See* ECF No. 18.)

[2] The introduction to Defendants' Motion asserts that the Court "should dismiss the First Amended Complaint because the allegations fail to state a claim for which relief may be granted as to Plaintiff's . . . Eighth Amendment cruel and unusual punishment claim . . . ." (Mot. at 1.) The Motion does not, however, make any argument for why that claim should be dismissed.

refrain from similar conduct in the future. (*See id.* Ex. A.) Plaintiff also wrote to RJD's Warden to complain about Vizcarra's actions and to request an investigation and Vizcarra's removal. (*See id.* Ex. B.)

Plaintiff alleges that a few weeks later, Vizcarra and another Defendant, Officer Alvarez, retaliated against him because of these complaints, violating his First Amendment rights.[3] (*Id.* ¶ 34.) On March 11, 2018, Plaintiff was drinking a cup of coffee during another visit by his girlfriend. (*Id.* ¶¶ 35-37.) When he finished his coffee, Plaintiff asked another inmate to throw the cup away for him. (*Id.* ¶¶ 41, 43.) Before the other inmate was able to throw Plaintiff's cup away, Alvarez stopped him and took the empty cup. (*Id.* ¶ 44.) Shortly thereafter, Vizcarra ended Plaintiff's visit with his girlfriend, and ordered Plaintiff "to stand up and place his hands behind his back." (*Id.* ¶ 47.) Showing his medical chrono, Plaintiff explained that because of medical issues including a herniated disc and right wrist injury, he is unable to place his hands behind his back without experiencing painful cramps. (*See id.* ¶¶ 30-31, 50-51.) As a result of these conditions, Plaintiff's chrono requires the use of waist chains rather than handcuffs. (*See id.* Ex. C.)

Despite Plaintiff's documented medical conditions, he alleges that Vizcarra forced his hands behind his back and handcuffed him. (*Id.* ¶ 52.) Vizcarra then left Plaintiff cuffed in the "non-contact visiting tank" for 45 minutes to an hour while Plaintiff experienced "excruciating pain" and "begged and pleaded" for someone to uncuff him. (*See id.* ¶¶ 53-58.) Eventually Vizcarra returned to uncuff Plaintiff and ordered him to "strip out." (*Id.* ¶ 60.) Because of the cuffing, Plaintiff was unable to move his right arm and was in pain in his neck and back. (*Id.* ¶¶ 62-63.) Stepping inside the visiting tank,

---

[3] Plaintiff also requests a declaratory judgment that the third Defendant, Lieutenant Luna, retaliated against him, but the Complaint does not describe how Luna participated in the alleged retaliation. (*See* First Am. Compl. at VII(A)(1).) As explained more fully in Part II.b, this claim must be dismissed for failure to state a claim.

Vizcarra threatened Plaintiff with his baton and stating that he would "crush [Plaintiff's] skull" if Plaintiff moved (*Id.* ¶¶ 64, 68.) Vizcarra also pulled Plaintiff out of the room, slamming him against the wall and twisting his wrist. (*Id.* ¶¶ 65-67.) After again ordered Plaintiff to "strip out," which Plaintiff protested, Vizcarra put him back in handcuffs and returned him to the non-contact tank for thirty more minutes. (*Id.* ¶¶ 69-71.)

When Vizcarra finally uncuffed Plaintiff, he threatened to write a Rule Violation Report ("RVR") alleging that Plaintiff possessed alcohol during visitation that day, an assertion Plaintiff denies. (*Id.* ¶¶ 73-74.) Plaintiff sought medical attention for continuing pain that resulted from this incident and filed a staff complaint against Vizcarra for retaliation and violating his Eighth Amendment rights. (*See id.* ¶¶ 75-76, 79, Ex. E.) Later, Plaintiff filed another staff complaint alleging that Vizcarra was spreading rumors about Plaintiff. (*Id.* ¶ 80, Ex. G.)

On March 11, Alvarez submitted an RVR alleging that Plaintiff possessed alcohol during visitation earlier in the day. (*Id.* Ex. H.) Vizcarra provided a supplemental report included with this RVR, offering a substantially different description of that day's events than Plaintiff's Complaint. (*See id.* Ex. H.) Plaintiff subsequently pleaded not guilty and appeared for a hearing on the RVR before Lieutenant Luna. (*Id.* ¶ 82, Ex. H.)

At this hearing, Plaintiff alleges that Luna violated his Fourteenth Amendment Due Process rights in several respects. First, although Plaintiff was assigned an investigative employee to assist him in responding to the RVR (*see id.* Ex. H), Plaintiff alleges that Luna denied his requests to call at Alvarez and Vizcarra as witnesses at the hearing. (*Id.* ¶ 84.) While Luna permitted Plaintiff to provide a list of questions for Alvarez, Plaintiff alleges that Luna read the questions to Alvarez and directed her on how to answer. (*Id.* ¶¶ 95-97.) Second, Plaintiff argues that he was deprived of the ability to defend himself against the RVR because no testing was performed that would have proved whether he consumed alcohol, nor was it possible for Plaintiff to inspect the cup because it was thrown away before the hearing. (*See id.* ¶¶ 85-88, 90-94, Ex. H.) As support for his testing argument, Plaintiff points to a state regulation which sets forth the grounds for

obtaining a urine sample from an inmate "for the purpose of testing for . . . use of alcohol . . . ," or field testing seized substances. 15 Cal. Code Reg. § 3290(c). The regulation provides that field tests of suspected substances "may be performed" and that urinalysis "may be done" "[w]hen there is reasonable suspicion to believe the inmate has possessed, distributed, used, or is under the influence of . . . alcohol." *Id.* (c)(1). Plaintiff requested that such an analysis be performed the day after the incident.[4] (*See* First Am. Compl. ¶ 85, Ex. I.) Although this request was forwarded by prison officials, Plaintiff alleges that it was ignored, and no testing took place. (*See id.* ¶ 88, Ex. I.)

Following the hearing, Luna found plaintiff guilty and assessed losses of credit and pay and a thirty-day suspension of visiting privileges, concluding that a "preponderance of the evidence . . . supports a GUILTY finding" for possession of alcohol. (*Id.* Ex. H (emphasis in original).) In support of this finding, Luna cited as evidence the RVR submitted by Alvarez and Plaintiff's not guilty plea. (*Id.*) Plaintiff alleges that this finding also violated his right to due process because Luna did state "'specifically' what evidence [he] relied upon." (*Id.* ¶ 100.) Plaintiff subsequently appealed and alleges that he exhausted all available administrative remedies prior to filing suit. (*Id.* ¶¶ 7, 101.)

## II. Defendants' Motion to Dismiss

### a. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

---

[4] Plaintiff also notes that another inmate who was allegedly drinking on March 11 was found not guilty at his RVR hearing. (*See* First Am. Compl. ¶ 89, Ex. J.)

5

*Villa v. Maricopa Cnty.*, 865 F.3d 1224, 1228-29 (9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation and quotes omitted); *accord Lacey v. Maricopa Cnty.*, 693 F.3d 896, 911 (9th Cir. 2012) (en banc). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

### b. First Amendment Retaliation Claims

Plaintiff's retaliation claims focus on (1) the RVR filed by Alvarez (and supplemented by Vizcarra) alleging that Plaintiff possessed alcohol, and (2) the alleged threats and assault by Vizcarra, both of which happened within a few weeks of Plaintiff filing a staff complaint against Vizcarra. (*See* First Am. Compl. at 10 (alleging that Vizcarra assaulted and threatened Plaintiff and that Alvarez was "acting in concert" with Vizcarra).) Although it is not the subject of Defendants' motion to dismiss, Plaintiff also

alleges that Defendant Luna retaliated against him. (*See id.* (requesting a declaratory judgment that, among other things, Defendant Luna "violated plaintiff's 1st.amend.right [sic] to free speech and to petition the government for redress without being subjected to Retaliation.").)

A retaliation claim has five elements. *See Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Second, Plaintiff must allege that Defendants took adverse action against him. *Id.* at 567. The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action . . . ." *Brodheim*, 584 F.3d at 1270. Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct, that is that Defendants had a retaliatory motive. *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." *Rizzo v. Dawson*, 778 F.2d 532, 532 (9th Cir. 1985); *see also Watison*, 668 F.3d at 1114-15.

Defendants do not dispute that Plaintiff has adequately alleged the first two elements. Filing an inmate grievance, like Plaintiff did against Vizcarra, is protected conduct. *See Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) ("[Plaintiff] exercised his First Amendment rights to file prison grievances . . . ."); *see also Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." (citing *Brodheim*, 584 F.3d at 1269)). And both the alleged assault by Vizcarra and the submission of the RVR against Plaintiff constituted "adverse action." *See Rhodes*, 408 F.3d at 568 (alleged

assault by prison officials constituted an adverse action); *see also Stevenson v. Harmon*, No. 07-CV-1619 W (NLS), 2009 WL 10700432, at *4 (S.D. Cal. July 30, 2009) ("The issuance of an RVR constitutes an adverse action." (citing *Andrews v. Whitman*, No. 06-2447-LAB(NLS), 2009 WL 857604, at *24 (S.D. Cal. Mar. 27, 2009)).

Defendants focus instead on the third element, causation, arguing that "absent in [Plaintiff's] allegations are any facts establishing that Plaintiff's exercise of free speech was the motivating factor for Vizcarra to take the actions he allegedly did, and any circumstantial 'proximity-in-time' argument fails." (Mot. at 9; *see also id.* (stating that "circumstantial evidence of timing, without more, is insufficient." (citing *Pratt*, 65 F.3d at 808)).) Additionally, Defendants assert that Plaintiff's allegations against Alvarez are insufficient because "[t]here is nothing to show that Alvarez [submitted the RVR] because of Plaintiff's First Amendment conduct, that this action chilled his rights, or that her actions did not further a legitimate penological interest." (Mot. at 9.)

Plaintiff's retaliation claim against Vizcarra fails because he does not allege any facts connecting his staff complaint to the alleged retaliation. The Complaint does not allege that Vizcarra was aware that Plaintiff filed a staff complaint, let alone that his subsequent actions were motivated by such knowledge. *See Pratt*, 65 F.3d at 807-08 (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials were aware of an inmate's First Amendment activity and retaliated on that basis). As Plaintiff rightly points out, because direct evidence of retaliatory intent is typically outside a plaintiff's personal knowledge and therefore can rarely be pleaded in a complaint, alleging "a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114 (citing *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")). But "[t]iming alone . . . is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct." *O'Brien v. Gularte*, No. 18-cv-BAS-MDD, 2019 WL 77112, at *3 (S.D. Cal.

Jan. 2, 2019). A Plaintiff still must allege "'sufficient facts to plausibly suggest a nexus between' the alleged protected activity and the adverse action taken by a defendant." *Id.* (quoting *Rojo v. Paramo*, No. 13cv2237 LAB (BGS), 2014 WL 2586904, at *5 (S.D. Cal. June 10, 2014)); *see also Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 WL 422575, at *9 (S.D. Cal. Feb. 4, 2019) ("Mere allegations of timing—without more—are not sufficient to satisfy [the causation] element." (citing *Pratt*, 65 F.3d at 807-08)).

Plaintiff does not allege any facts that would plausibly suggest a nexus between his staff complaint and the alleged retaliation. Even assuming that proximity in time between these two events is evidence of a retaliatory motive on the part of Vizcarra, it is not sufficient by itself to plausibly allege that Vizcarra was motivated by the staff complaint. Unlike other cases involving alleged retaliation, Plaintiff does not allege, for example, that Vizcarra mentioned the staff complaint to Plaintiff or even that he was aware of the complaint. *See, e.g.*, *Shepard v. Quillen*, 840 F.3d 686, 690 (9th Cir. 2016) (threatening to segregate inmate if he reported wrongdoing followed by same-day transfer after inmate refused to recant report sufficient to show that the transfer was "motivated by a desire to retaliate.") (citing *McCollum v. Cal. Dep't of Corrs. & Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011)); *Watison*, 668 F.3d at 1115-16 (finding statements like "Your emergency grievance isn't going to stand" and "They're not going to do nothing with those grievances you filed against me," suggested that officer's conduct was retaliatory); *cf. Pratt*, 65 F.3d at 807-09 ("Most importantly, there is insufficient evidence to support the district court's finding that . . . DOC officials who were involved in the transfer decision were actually aware of" plaintiff's First Amendment conduct). In the absence of allegations tying the staff complaint to the alleged retaliation, the only basis for concluding that Vizcarra had a retaliatory motive is speculation. As a result, Plaintiff's retaliation claim against Vizcarra is **DISMISSED** with leave to amend.

Plaintiff's allegations against Alvarez are even more speculative. Plaintiff seemingly assumes, without alleging more than that Alvarez was "acting in concert" with Vizcarra, that Vizcarra and Alvarez were aware of Plaintiff's staff complaint and that

Alvarez agreed to help Vizcarra retaliate against Plaintiff. (*See* First Am. Compl. at 10.) The conclusory assertion that the two officers were acting in concert is plainly insufficient to allege retaliatory motive on the part of Alvarez. *See, e.g.*, *Hammler*, 2019 WL 422575, at *9 ("Because Plaintiff alleges no facts to show that [the officer] had any prior knowledge of this grievance, there are no facts to suggest that [the officer] issued the RVR in retaliation for the filing of a grievance."); *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1164-65 (N.D. Cal. 2019) (dismissing claims against individual officers where there were no allegations they were aware of the Plaintiff's First Amendment activity and rejecting argument that officers without knowledge of protected speech could be held liable for retaliation by acting "in concert" with ones with knowledge). Accordingly, Plaintiff's First Amendment retaliation claim against Alvarez is **DISMISSED** with leave to amend.

Although Defendants have not moved to dismiss the First Amendment claim against Luna, to the extent Plaintiff asserts such a claim, the Court finds that *sua sponte* dismissal is required under 28 U.S.C. Sections 1915(e)(2)(B)(ii). The sole First Amendment allegation against Luna in the Complaint is a paragraph requesting a declaratory judgment that "[t]he acts and conduct of officer . . . Luna violated plaintiff's 1st.amend.right [sic] to free speech and to petition the government for redress without being subjected to Retaliation." (First Am. Compl. at 10.) Although, and as discussed below, the Complaint alleges facts regarding Luna's alleged violations of Plaintiff's due process rights, without more, this conclusory sentence does not state a claim for First Amendment retaliation by Luna. Accordingly, any First Amendment claim against Luna is *sua sponte* **DISMISSED** with leave to amend. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring the court to *sua sponte* dismiss any claim brought in forma pauperis "at any time" if it finds the complaint fails to state a claim); *see also Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (noting that 28 U.S.C. Section 1915(e) "not only permits but requires" *sua sponte* dismissal of in forma pauperis complaints that fail to state a claim).

### c. Fourteenth Amendment Due Process Claims

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974)). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.*; *see also Wolff*, 418 U.S. at 566 (explaining that an inmate must be afforded an opportunity "to call witnesses and present documentary evidence in his or her defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.").

Plaintiff alleges that Defendant Luna denied him due process when his requests to call Alvarez and Vizcarra as witnesses at the RVR hearing were denied, and when his requests for urinalysis, testing of the substance he was allegedly drinking, and examination of the cup, which was destroyed by Alvarez, were also denied. (*See* First Am. Compl. ¶¶ 84-94.) Further, Plaintiff alleges that Luna deprived him of due process when, rather than allow Plaintiff to question Alvarez directly, Luna read Plaintiff's questions to Alvarez and coached her on how to respond. (*See id.* ¶¶ 95-97.)

Although Defendants did not raise this issue in their motion to dismiss, Plaintiff's due process claims must be dismissed *sua sponte* pursuant to 28 U.S.C. Section

11

1915(e)(2)(B)(ii) because the Complaint does not allege facts sufficient to show that the RVR proceedings implicated a liberty interest that would trigger the procedural protections in *Wolff*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) (requiring the court to dismiss *sua sponte* any claim brought in forma pauperis "at any time" if it finds the complaint fails to state a claim). The procedural protections in *Wolff* "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano*, 345 F.3d at 1077 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003)).

While the level of hardship necessary to show a liberty interest must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system," *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005), the Ninth Circuit and district courts within it have concluded that the loss of good time credits, visitation privileges, or prison employment, or the assessment of points on an inmate's record are not by themselves atypical and significant hardships. *See, e.g.*, *Salinas v. Montgomery*, No. 3:19-cv-0744-AJB-RBB, 2019 WL 2191349, at *5 (S.D. Cal. May 21, 2019) (alleging that an inmate was "assessed a good-time credit loss of 90 days" was insufficient to show atypical and significant hardship); *Contreras v. Herrera*, No. 3:18-cv-00717-MMA-AGS, 2018 WL 4961510, at *5 (S.D. Cal. Oct. 15, 2018) (losing visitation privileges for six months is not an atypical and significant hardship); *Meeks v. Nevada*, No. 3:10-cv-00558-RCJ-RAM, 2011 WL 221774, at *4 (D. Nev. 2011) (adding points to an inmate's record, even if they made it impossible to transfer to less restrictive prison, are not an atypical and significant hardship); *see also Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment 'does not create a property or liberty interest in prison employment . . . .'" (quoting *Ingram v. Papalia*, 804 F.2d 595, 596 (10th Cir. 1986) (per curiam))); *see also Wilkinson*, 545 U.S. at 223 ("[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in

avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" (quoting *Sandin*, 515 U.S. at 484)); *Murschel v. Paramo*, No. 3:17-cv-1142-BTM-AGS, 2018 WL 539159, at *5 (S.D. Cal. 2018) ("The issuance of a false RVR, alone, does not state a claim under section 1983.") (citing *Dawson v. Beard*, No. 15-cv-01867 DLB, 2016 WL 1137029, at *5-6 (E.D. Cal. 2016)); *but see Sandin*, 515 U.S. at 487 (due process protections attach "where the State's action will inevitably affect the duration of [plaintiff's] sentence.").

Plaintiff alleges that he lost thirty days of good time credit, ninety days of pay, thirty days of visitation privileges, and six custody points. (First Am. Compl. ¶ 99.) But no other facts are alleged from which the Court could find that Plaintiff suffered a change in confinement that imposed an "atypical and significant hardship" such that the procedural protections in *Wolff* applied to Plaintiff's RVR hearing. As a result, Plaintiff's Fourteenth Amendment claims are **DISMISSED** in their entirety, but with leave to amend.[5]

Even assuming that Plaintiff adequately alleged an atypical and sufficient hardship and thus a liberty interest under the Due Process Clause, several of his due process allegations are nevertheless subject to dismissal. For example, Plaintiff fails to state a claim for violations of due process with respect to the denial of his request for urinalysis or testing or examination of the cup from which he was allegedly drinking. "Courts confronting due process claims based on prison officials' denial of requests for fingerprinting and other scientific analyses have concluded that the minimal due process guarantees prescribed by *Wolff* do not encompass a right to have evidence tested for fingerprints or subjected to similar scientific analyses. Rather, *Wolff* gives the inmates

---

[5] Because Plaintiff's Fourteenth Amendment claims are dismissed in their entirety, but with leave to amend, the Court need not address Plaintiff's allegations that his requests to call Alvarez and Vizcarra as witnesses at the hearing were denied the claim or the claim that Luna coached Alvarez at the hearing in her responses to Plaintiff's written questions.

13

3:18-cv-02911-JAH-BLM

the right to present evidence that they collect (alone or with the help of a fellow inmate or staff member for 'complex matters'), subject to the qualification that '[w]hen prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason.'" *Barboza v. Kelsey*, No. 03-3855 AHM (AJW), 2008 WL 2512785, at *11 (C.D. Cal. June 23, 2008) (quoting *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam)).

To the extent Plaintiff alleges that Luna and other prison officials violated due process by failing to adhere to the regulations governing urinalysis or field testing, this too fails to state a claim because prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates." *Sandin*, 515 U.S. at 481-82; *see also Singleton v. Kernan*, No. 3:16-cv-2462-BAS-NLS, 2019 WL 142190, at *8 (S.D. Cal. Jan. 8, 2019) (collecting cases). In any event, the regulations Plaintiff cites are permissive, not mandatory, and did not require prison officials to test the contents of the cup or Plaintiff's urine, whether on their own or at Plaintiff's request. *See generally* 15 Cal. Code Reg. § 3290(b), (c) (providing that field testing "may be performed" and that urine samples "may be done" for certain specified reasons). As a result, even if due process required prison officials to comply with these regulations, the regulations were not violated in this case, and Defendants' motion to dismiss these claims is **GRANTED** with leave to amend.

Likewise, Plaintiff's argument that Luna's finding of guilt on the RVR violated due process because Luna "failed to state 'specifically' what evidence [he] relied upon," also fails to state a claim. (*See* First Am. Compl. ¶ 100.) As mentioned, *Wolff* requires that a prisoner be provided with "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563. In support of his finding of guilt, Luna provided Plaintiff with a narrative stating that "[a]ll evidence was considered during this hearing and the preponderance of that evidence as described herein supports a GUILTY finding for violating Section 3016(a), with the specific act described as: 'Possession of Alcohol[.]'" (First Am. Compl. Ex. H.) Luna

went on to explain why, contrary to Plaintiff's argument, testing of the alleged alcohol was not necessary and why possession of alcohol constituted a violation of applicable prison regulations. (*See id.*) Additionally, in a section captioned "EVIDENCE," Luna laid out the evidence used to support his finding of guilt, namely Alvarez's statements in the RVR and Plaintiff's not guilty plea. (*See id.*)

This is sufficient to satisfy the due process requirements in *Wolff*. In the prison setting all that is necessary to support disciplinary findings is "some evidence." *See Superintendent v. Hill*, 472 U.S. 445, 457 (1985). As other courts have found, written reports by prison officials can supply the evidence necessary to support a finding of guilt.[6] *See, e.g.*, *Hurd v. Scribner*, Civ. No. 06CV0412 JAH(LSP), 2007 WL 1989688, at *5 (S.D. Cal. May 2, 2007) (finding that a written report by the prison official who ordered plaintiff to submit to urinalysis and testimony of an employee that the plaintiff understood he would be punished for refusal was sufficient due process and constituted "some evidence" in support of the finding of guilt (citing *Hill*, 472 U.S. at 457)). The cases cited by Plaintiff in his Complaint are not to the contrary. Setting aside the fact that these cases, *Chavis v. Rowe*, 643 F.2d 1281 (7th Cir. 1981) and *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977) predate the Supreme Court's decision in *Hill*, the proposition for which Plaintiff cites them, that "[t]o simply state…' Baesd (sic) upon a preponderance of evidence' is insufficient," is not at issue in this case. (First Am. Compl. ¶ 101.) Luna's decision sufficiently explained why he reached the conclusion that he did and the

---

[6] Plaintiff argues in his opposition that he was also denied due process when he was denied access to video or photographic evidence of the alleged drinking. (*See* Opp'n at 9.) This is not alleged in the Complaint, however, and therefore is not properly before the Court. *See, e.g.*, *Johnson v. City of San Francisco*, No. 16-cv-2913-SI, 2016 WL 5394092, at *2 (N.D. Cal. Sept. 27, 2016) ("Although plaintiff includes some facts in his opposition to defendant's motion, the Court's review is limited to the face of the complaint."). If Plaintiff wishes to allege violations of due process based on the denial of this evidence, he should include factual allegations regarding the same in his Second Amended Complaint.

evidence upon which he relied in reaching it. Due process does not require more. *See Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987) (distinguishing *Chavis* and *Hayes* and noting that "[w]ith respect to each of the disciplinary reports, the question was whether the plaintiff did or did not do the things recited in the conduct report. In each instance, the only evidence contradicting the conduct report was plaintiff's own statement in his defense . . . . Because there is no mystery about [the decision-maker's] reasoning process," a brief statement of reasons and supporting evidence was sufficient). As a result, Defendants' motion to dismiss Plaintiff's due process claims is **GRANTED** for these reasons as well.

## CONCLUSION

Based on the foregoing, the Court:

1. **GRANTS** Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 19). Specifically, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's First Amendment retaliation claims against Defendants Vizcarra and Alvarez with leave to amend, and **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment Due Process claims pursuant to both Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii), but with leave to amend.

2. **DISMISSES** Plaintiff's First Amendment retaliation claim against Defendant Luna *sua sponte* for failing to state any claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), but leave to amend.

3. **GRANTS** Plaintiff forty-five (45) days leave from the date this Order is filed in which to file a Second Amended Complaint which cures all the deficiencies of the pleading noted above. Any Second Amended Complaint must be complete in itself without reference to the superseded pleading. *See* S.D. Cal. Civ. L.R. 15.1. This includes Plaintiff's Eighth Amendment claim against Defendant Vizcarra, which was not the subject of Defendants' Motion to Dismiss, and which, if Plaintiff still wishes to pursue it, must be realleged in any Second Amended Complaint. Defendants not named and claims not realleged in the Second Amended Complaint will be deemed to have been waived. *See*

16

*King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). If Plaintiff's Second Amended Complaint fails to state a claim upon which relief may be granted, it may be dismissed without further leave to amended. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). If Plaintiff does not wish to amend his complaint to cure the deficiencies noted above, and wishes instead to proceed only with his Eighth Amendment claim against Defendant Vizcarra, he may do so by notifying the Court and Defendants of that decision in writing no later than forty-five (45) days from the date this Order is filed. Should Plaintiff choose to proceed in this manner, Defendant Vizcarra shall answer the Eighth Amendment allegations in Plaintiff's First Amended Complaint no later than twenty-one (21) days from the date Plaintiff notifies the Court of his intent to proceed solely with those claims.

**IT IS SO ORDERED**.

Dated: December 2, 2019

Hon. John A. Houston
United States District Judge