UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON RILEY,<br>CDCR # E-48875,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>L. VIZCARRA, Correctional Officer;<br>S. ALVAREZ, Correctional Officer;<br>J. LUNA, Correctional Lieutenant,<br><br>　　　　　　　　　　　Defendants. | Case No.: 18cv2911-JAH (AHG)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>**[ECF No. 28]** |

Plaintiff Shannon Riley is a state prisoner proceeding *pro se* and *in forma pauperis* with a Second Amended Complaint ("SAC") under 42 U.S.C. § 1983. (ECF No. 24.) He alleges that while incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, his First, Eighth, and Fourteenth Amendment rights were violated when he was humiliated and spat on during a strip search, falsely charged with possession of alcohol and subjected to excessive force and deliberate indifference to his medical needs in retaliation for filing a complaint about the search, and denied due process during a disciplinary hearing on the possession of alcohol charge. (*Id*. at 3-11.)

Presently before the Court is Defendants' Motion to Dismiss all but two claims in the SAC. (ECF No. 28.) Plaintiff has filed an Opposition. (ECF No. 32.) Defendants

filed a reply. (ECF No. 36.) For the following reasons, the Court **GRANTS** Defendants' Motion to Dismiss and **DISMISSES** all claims in the SAC except the First and Eighth Amendment claims against Defendant Vizcarra based on the events of March 18, 2018.[1]

## I. Procedural History

Plaintiff initiated this action by filing a Complaint on December 31, 2018, naming as Defendants RJD Correctional Officers Vizcarra, Alvarez and Luna. (ECF No. 1.) He alleged Defendant Vizcarra violated his Eighth Amendment rights during a February 18, 2018 strip search in which he spat on and humiliated Plaintiff, and during a March 18, 2018 incident in which he used excessive force, was deliberately indifferent to Plaintiff's medical condition by handcuffing him with his hands behind his back, and placed him in danger of assault by other inmates. (*Id.* at 10-14.) Plaintiff alleged his First Amendment right to petition for the redress of grievances was violated by Defendant Vizcarra because he took the March 18, 2018 actions in retaliation for a complaint Plaintiff filed about the February 18, 2018 incident, and when Defendants Vizcarra and Alvarez falsely charged him with possession of alcohol in retaliation for that complaint. (*Id.*) He alleged Defendant Luna violated his Fourteenth Amendment due process rights during the disciplinary on the alcohol possession charge when he denied Plaintiff's request to call Defendants Vizcarra and Alvarez as witnesses, coached Defendant Alvarez on how to respond to Plaintiff's written questions, denied requests for urinalysis and testing of evidence, and failed to provide a written statement of the evidence relied on to make the guilty finding. (*Id.*)

Defendants' motion to dismiss the original Complaint was denied as moot after Plaintiff filed a First Amended Complaint on July 1, 2019. (ECF Nos. 13, 17-18.) The First Amended Complaint presented the same claims against the same Defendants with the

---

[1] Although this matter was randomly referred to United States Magistrate Judge Allison H. Goddard pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

addition of a First Amendment retaliation claim against Defendant Luna. (ECF No. 17.) Defendants' motion to dismiss the First Amended Complaint was granted on December 3, 2019. (ECF No. 23.) The Court dismissed all claims other than the Eighth Amendment claims against Defendant Vizcarra arising from the February 18, 2018 and March 18, 2018 incidents, which was not part of the motion to dismiss, notified Plaintiff of the defects of pleading as to the dismissed claims, and granted leave to amend. (*Id*. at 16.)

Plaintiff filed the SAC, the operative pleading in this action, on January 13, 2020, presenting the same claims against the same Defendants as the First Amended Complaint but with additional allegations. (ECF No. 24.) Defendants now move to dismiss all claims from the SAC except the First and Eighth Amendment claims against Defendant Vizcarra arising from the March 18, 2018 incident. (ECF No. 28.) Plaintiff has filed an Opposition (ECF No. 32) and Defendants have filed a reply. (ECF No. 36.)

## II.     Plaintiff's Allegations in the SAC

Plaintiff alleges that on February 18, 2018, while incarcerated at RJD, he interrupted a visit with his girlfriend to urinate. (ECF No. 24 at 3.) Defendant Vizcarra was stationed at the back of the visiting area and allowed Plaintiff access to the inmate restrooms where five other correctional officers were present. (*Id*.) Plaintiff walked to the area designated for inmates to "strip out" after visitation and stripped down to his boxer shorts. (*Id*.) As he walked toward the toilet, Defendant Vizcarra abruptly stopped him and ordered him to get completely naked, bend over, and spread his buttocks. (*Id*.) Plaintiff was "caught off guard" by the order and replied, "I'm not leaving, I just need to use the restroom." (*Id*.) Defendant Vizcarra "suddenly became extremely aggressive and yelled at plaintiff, 'I said fucking strip out,'" and the other correctional officers in the area surrounded him. (*Id*.) Defendant Vizcarra "stepped extremely close to plaintiff and removed his baton and yelled angrily at plaintiff to 'strip out' as saliva flew out of his mouth and landed on plaintiff's face." (*Id*.) When he asked why he needed to get naked just to urinate, Defendant Vizcarra moved closer and, with their noses touching, yelled "with extreme aggression" to strip out, sending more saliva into Plaintiff's face, and he backed away and complied. (*Id*. at 4.)

Plaintiff filed a California Department of Corrections and Rehabilitation ("CDCR") 602 form complaint against Defendant Vizcarra regarding that incident. (*Id*.) Although Plaintiff states that a copy of that complaint is attached to the SAC as Exhibit A (*id*.), and refers to other attached exhibits throughout the SAC, there are no attachments to the SAC, and he appears to be referring to the exhibits attached to the First Amended Complaint. A copy of the CDCR 602 complaint is attached to the First Amended Complaint as Exhibit A. (ECF No. 17 at 13-14.) He claims in the SAC that Defendant Vizcarra spit in his face and humiliated him in violation of the Eighth Amendment. (ECF No. 24 at 16.)

Plaintiff alleges that a few weeks later, on March 18, 2018, as he approached the visiting area for another visit with his girlfriend, Defendant Vizcarra, while checking his identification before entering, said: "So you thought I wouldn't hear about your piece of shit 602? You fucking inmates are a bunch of whiners." (*Id*. at 4.) Plaintiff proceeded to the desk to be given a seat assignment when Defendant Vizcarra approached him from behind and said to the desk officer Defendant Alvarez: "This is the piece of shit whiner I told you about." (*Id*. at 5.) Plaintiff replied to Defendant Vizcarra: "You just won't stop, huh?" (*Id*.) Defendant Vizcarra then said: "You just stepped in shit and don't know it." (*Id*.) Plaintiff proceeded with his visit during which he had a cup of coffee; when he gave his empty coffee cup to Inmate Acosta, an inmate porter who was sweeping the area, to throw away, Defendant Alvarez grabbed the cup from Inmate Acosta and told Plaintiff: "Your visit is terminated! Get up and let's go!" (*Id*. at 5-6.) When Plaintiff asked, "for what!?," Defendant Vizcarra angrily ordered Plaintiff "to stand up and place his hands behind his back," and other officers responded. (*Id.* at 6.) Plaintiff told the officers he had a medical chrono which excused him from being restrained with his hands behind his back and showed them a copy of the chrono. (*Id*.) Although he states that a copy of the medical chrono is attached to the SAC as Exhibit C (*id*. at 7), it is not, but a copy is attached to the First Amended Complaint as Exhibit C. (ECF No. 17 at 27-28, 32, 46.)

Plaintiff alleges that despite his documented medical condition which prevents him from placing his hands behind his back, Defendant Vizcarra twisted his right wrist, which

was in a brace, forced his hands behind his back, slammed him against a wall, and handcuffed his hands behind his back. (ECF No. 24 at 6-7.) Defendant Vizcarra left Plaintiff handcuffed in the "non-contact visiting tank" for 45 minutes to an hour during which he experienced "excruciating pain," and "begged and pleaded" and screamed hysterically for someone to uncuff him. (*Id.*) Only after a visitor complained did Defendant Vizcarra return to uncuff Plaintiff and order him to "strip out." (*Id.*) Plaintiff was unable to move his right arm after the handcuffs were removed and had pain in his neck and back. (*Id.*) Defendant Vizcarra entered the visiting tank, threatened Plaintiff with his baton, and said he would "crush [Plaintiff's] skull" if he moved. (*Id.* at 8.) Defendant Vizcarra pulled Plaintiff out of the room, slammed him against the wall, and twisted his wrist. (*Id.*) After again ordering him to "strip out," which Plaintiff protested, Defendant Vizcarra put him back in handcuffs and returned him to the non-contact tank for 30 minutes where he continued screaming due to the unbearable pain. (*Id.*) Defendant Vizcarra then uncuffed Plaintiff and told him: "Now go write your 602 about that while I write you up for having pruno and we'll see who wins." (*Id.*)

Plaintiff states he has medical issues with his back, neck and wrist as a result of Defendant Vizcarra's actions (*id.* at 9) and refers to medical documentation and complaints regarding those injuries which he states are attached to the SAC as Exhibits F and G (*id*. at 8-9), which are not, but which are attached to the First Amended Complaint as Exhibits F and G. (ECF No. 17 at 58-65.) He filed inmate complaints against Defendant Vizcarra claiming violations of his Eighth Amendment rights. (ECF No. 24 at 9.) He claims in the SAC that Defendant Vizcarra was deliberately indifferent to his medical needs and to the threat of assault by other inmates and used excessive force in violation of the Eighth Amendment, and did so in retaliation for the complaints against him in violation of his First Amendment right to petition for the redress of grievances, and that Defendants Vizcarra and Alvarez filed the false charges of possession of alcohol in retaliation for filing those complaints in violation of his First Amendment right to petition for the redress of grievances. (ECF No. 24 at 16-17.)

On May 13, 2018, Plaintiff appeared before hearing officer Defendant Luna for a hearing on a Rules Violation Report ("RVR") for possession of alcohol during the March 11, 2018, visit. (*Id*. at 9.) He was found guilty of possession of alcohol and assessed 120-day loss of custody credits, a 30-day suspension of visiting privileges and 90-days loss of pay. (*Id*. at 11.) He refers to Exhibit H-K as documentation of the RVR hearing and his appeal (*id*. at 9-10), which are not attached to the SAC but are attached to the First Amended Complaint as Exhibits H-K. (ECF No. 17 at 67-101.) He claims Defendant Luna violated his Fourteenth Amendment due process rights because: (1) his request to call Defendants Alvarez and Vizcarra as witnesses was denied; (2) although he was allowed to provide a list of questions for Defendant Alvarez, Defendant Luna read the questions and directed Defendant Alvarez how to answer; and (3) his request for urinalysis was denied and no testing was performed on the cup he handed to the inmate porter to throw away to prove it contained alcohol despite his request for testing as provided for by CDCR regulations. (*Id*. at 9-11, 16-17.)

### III. Defendants' Motion to Dismiss

Defendants move to dismiss all claims in the SAC other than Plaintiff's First and Eighth Amendment claims against Defendant Vizcarra for his actions during the March 18, 2018 incident, which were allegedly taken in retaliation for Plaintiff's complaint about the February 18, 2018 incident. (ECF No. 28.) Defendant Alvarez contends Plaintiff has not stated a First Amendment retaliation claim against her because there are no allegations she took any adverse action against Plaintiff because of the CDCR 602 complaint against Defendant Vizcarra. (*Id*. at 15-18.) Rather, Defendant Alvarez contends Plaintiff merely speculates that her actions were taken in retaliation for filing the complaint, and that he fails to allege the actions she did take, that she was the reporting employee in the RVR charging him with possession of inmate-manufactured alcohol ("pruno") and that she took the cup from the inmate porter to whom Plaintiff handed it and destroyed it before it could be tested for the presence of alcohol, constitute adverse actions without a legitimate penological purpose. (*Id*. at 18.)

Defendants move to dismiss Plaintiff's Fourteenth Amendment due process claim against Defendant Luna on the basis that the RVR attached to the First Amended Complaint, a copy of which is also attached to the Motion to Dismiss, contradicts the allegations in the SAC that Plaintiff was denied due process. (*Id*. at 18-21.) Defendants argue the RVR shows Plaintiff received all the process he was due, including notice of the charge, an opportunity to be heard, and a written statement explaining the reasons for the guilty finding and identifying the evidence relied upon. (*Id*.)

Finally, Defendants move to dismiss Plaintiff's Eighth Amendment excessive force claim against Defendant Vizcarra arising from the February 18, 2018 incident, arguing that no force was used during that encounter and Plaintiff merely alleges Defendant Vizcarra spat in his face and humiliated him. (*Id*. at 21-22.) Defendant Vizcarra also contends that even if he violated the Eighth Amendment during that incident he is entitled to qualified immunity because no clearly established law exists to place him on notice that his actions were unconstitutional. (*Id*. at 23-24.)

Plaintiff argues in his Opposition that the Court is required to liberally construe the allegations in the verified *pro se* SAC, draw any inferences from his allegations in the light most favorable to him, and give him the benefit of any doubt. (ECF No. 32 at 1.) He contends it is improper for Defendants to rely on the RVR attached to his First Amended Complaint or make any reference to that version of his complaint because the operative pleading in this action is now the SAC to which he has not attached a copy of the RVR. (*Id*. at 2.) He presents additional factual allegations in his Opposition supporting the claims in the SAC and argues that he has plausibly alleged constitutional violations as to all claims. (*Id*. at 1-10.)

Defendants reply that reliance on the RVR attached to the First Amended Complaint is appropriate because it is referenced repeatedly in the SAC and is attached to the motion to dismiss. (ECF No. 36 at 2.) They argue that any factual allegations in Plaintiff's Opposition not contained in the SAC are not properly before the Court on a motion to dismiss and in any case fail to cure the pleading defects of the claims. (*Id*. at 2-3.)

### 1. Legal Standards

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), quoting *Iqbal*, 556 U.S. at 678.

### 2. First Amendment Retaliation Claims

Plaintiff claims Defendants Vizcarra, Alvarez and Luna violated his First Amendment right to petition for the redress of grievances by retaliating against him for filing the CDCR complaint against Defendant Vizcarra after the February 18, 2018 strip search incident. He claims Defendant Vizcarra's actions on March 18, 2018, including twisting his wrist and handcuffing his hands behind his back in violation of his medical chrono, use of threatening language, slandering him which placed him in danger of assault by other inmates, and involvement in the RVR which falsely charged him with possession

of alcohol, were taken in retaliation for filing the complaint against him, failed to advance a legitimate correctional goal, and chilled the exercise of his First Amendment rights. (ECF No. 24 at 15-16.)  Plaintiff claims Defendant Alvarez retaliated against him by filing the RVR charging him with possession of alcohol during the March 18, 2018 visit and by destroying the cup she took from the inmate porter Plaintiff handed it to rather than placing it in evidence. (*Id*. at 10-11, 16-17.)  Although Plaintiff claims Defendant Luna retaliated against him when he violated his due process rights by presiding over a "sham" disciplinary hearing, he does so in an entirely conclusory fashion, not even indicating what allegedly prompted Defendant Luna to retaliate. (*Id*. at 17.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).  The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere threat of harm can be an adverse action."); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.")  Plaintiff must allege a retaliatory motive, that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff has adequately alleged the first element because the filing of an inmate grievance is protected conduct. *Rhodes*, 408 F.3d at 568; *Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.")  Plaintiff has also satisfied the second element, as the alleged use of excessive force and deliberate indifference by Defendant Vizcarra, the

filing of an allegedly false RVR by Defendant Alvarez, and the allegedly "sham" disciplinary hearing presided over by Defendant Luna, all constitute "adverse action." *See Rhodes*, 408 F.3d at 568 (alleged assault by prison officials constituted an adverse action); *see also e.g. Stevenson v. Harmon*, No. 07-CV-1619 W (NLS), 2009 WL 10700432, at *4 (S.D. Cal. July 30, 2009) (noting that prison disciplinary proceedings constitute adverse action).

In the previous Order granting Defendants' motion to dismiss the First Amended Complaint, the Court found Plaintiff had failed to allege Defendants Vizcarra and Alvarez were aware he had filed a complaint or their actions were motivated by such knowledge, and that Plaintiff's mere reliance on the timing of the events was insufficient by itself to satisfy the causation element. (ECF No. 23 at 8-10, citing *Pratt*, 65 F.3d at 807-08 (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials were aware of an inmate's First Amendment activity and retaliated on that basis), and *id*. at 808 ("Timing alone . . . is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct.")  The Court granted Defendants' motion to dismiss the First Amendment retaliation claims as to Defendants Vizcarra and Alvarez, and *sua sponte* dismissed the retaliation claim against Defendant Luna as conclusory, all with leave to amend. (*Id*.)

In his Opposition to Defendants' motion to dismiss the SAC, Plaintiff again relies in part on the timing of events, but also points out he has now alleged in the SAC that Defendants Vizcarra and Alvarez were aware he had filed a complaint, as Defendant Vizcarra made a reference to Plaintiff's CDCR 602 complaint at the beginning of the March 18, 2018 visit, both to Plaintiff and to Defendant Alvarez. (ECF No. 32 at 2-3.) Plaintiff alleges in the SAC that when he entered the visiting area on March 18, 2018, Defendant Vizcarra said: "So you thought I wouldn't hear about your piece of shit 602? You fucking inmates are a bunch of whiners." (ECF No. 24 at 4.) Defendant Vizcarra then allegedly told Defendant Alvarez: "This is the piece of shit whiner I told you about,"

referring to Plaintiff, and when Plaintiff complained aloud, Defendant Vizcarra said: "You just stepped in shit and don't know it." (*Id*. at 5.) Plaintiff proceeded with his visit during which he had a cup of coffee; when he gave his empty coffee cup to an inmate porter to throw away, Defendant Alvarez grabbed the cup from the porter, and told Plaintiff: "You're visit is terminated!  Get up and let's go!" (*Id*. at 5-6.) When Plaintiff asked, "for what!?," Defendant Vizcarra angrily ordered Plaintiff "to stand up and place his hands behind his back," and thereafter allegedly restrained Plaintiff with excessive force and with deliberate indifference to his medical needs. (*Id.* at 6-8.)

Defendants do not dispute Plaintiff has adequately alleged a plausible claim of retaliation against Defendant Vizcarra.  The allegations in the SAC with respect to Defendant Vizvarra go beyond the mere timing of events and allege he was aware of the complaint Plaintiff filed against him regarding the events of February 18, 2018 and, in retaliation therefore, reacted angrily to Plaintiff handing a coffee cup to the inmate porter to throw away by terminating his visit, and restrained him with excessive force and deliberate indifference to his medical needs.  With respect to Defendant Alvarez, however, Defendants contend the allegations are speculative with respect to whether she acted with a retaliatory motive when she took the alleged actions against Plaintiff or whether those actions failed to advance a legitimate penological objective. (ECF No. 28 at 17-19.)

Plaintiff states in his Opposition that the timing of events implies retaliation because Defendant Alvarez filed the RVR charging him with possession of alcohol shortly after she was informed by Defendant Vizcarra that Plaintiff had filed a complaint about Defendant Vizcarra's actions on February 18, 2018. (ECF No. 32 at 4.) In his Opposition, Plaintiff presents allegations not contained in the SAC that Defendant Alvarez "continued to attempt to intimidate plaintiff at every opportunity she had" after being informed by Defendant Vizcarra about the complaint.  (*Id*.)  The new allegations presented in opposition to the motion to dismiss are not properly before the Court. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving

11

papers, such as a memorandum in opposition to a defendant's motion to dismiss.") Even to the extent the new allegations could be considered here, or Plaintiff could be allowed to further amend the SAC to include them, they are vague and conclusory. In any case, Defendant Alvarez's mere awareness of Plaintiff's complaint against Defendant Vizcarra does not plausibly allege Defendant Alvarez acted in retaliation when she filed the RVR or destroyed the cup rather, the only adverse actions Plaintiff alleges were taken against him by Defendant Alavarez. Although Plaintiff now alleges Defendant Alvarez was told by Defendant Vizcarra that Plaintiff had filed a complaint against Defendant Vizcarra, his claim still relies on speculation arising solely from the timing of events to establish a retaliatory motive on the part of Defendant Alvarez. This is the same defect of pleading upon which this claim was dismissed from the First Amended Complaint.

Plaintiff has once again failed to plausibly allege a First Amendment retaliation claim against Defendant Alvarez. In addition, the allegations of retaliation against Defendant Luna in the SAC are once again entirely conclusory and once again fail to state a claim for the reasons set forth in the Court's previous Order of dismissal. The Court **GRANTS** Defendants' motion to dismiss Plaintiff's First Amendment claims against Defendants Alvarez and Luna. Because Plaintiff has been informed of the deficiencies of pleading with respect to these claims and has failed to correct them in the SAC, the dismissal of these claims is without further leave to amend.

### 3. Fourteenth Amendment Due Process Claim

Plaintiff claims Defendant Luna, the hearing officer at the RVR hearing on the charge of possession of alcohol, violated his Fourteenth Amendment due process rights because: (1) he denied Plaintiff's request to call Defendants Alvarez and Vizcarra as witnesses; (2) although he allowed Plaintiff to provide a list of questions for Defendant Alvarez, Defendant Luna read the questions and directed Defendant Alvarez how to respond; and (3) Plainitff's request for urinalysis was denied and no testing was performed on the cup he handed to the inmate porter to throw away to prove it contained alcohol, despite his request for testing as provided for by CDCR regulations. (ECF No. 24 at 9-11,

16-17.) Plaintiff states he was found guilty of possession of alcohol and assessed 120-day loss of custody credits, a 30-day suspension of visiting privileges, and 90-days loss of pay. (*Id*. at 11.)

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000), quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.*; *see also Wolff*, 418 U.S. at 566 (explaining that an inmate must be afforded an opportunity "to call witnesses and present documentary evidence in his or her defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.")

In the Court's prior Order of dismissal, the Court dismissed Plaintiff's Fourteenth Amendment due process claim against Defendant Luna without prejudice because the First Amended Complaint did not allege facts sufficient to show that the RVR proceedings implicated a liberty interest which would trigger the procedural protections under *Wolff*, which "adhere only when the disciplinary action implicates a protected liberty interest in some unexpected matter or imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (ECF No. 23 at 11-13*,* quoting *Sandin v.*

*Conner*, 515 U.S. 472, 484 (1995).) The Court pointed out that the loss of good time credits, visitation privileges, prison employment or assessment of points on an inmate's prison record do not implicate such a liberty interest. (*Id.* at 12-13.) Plaintiff has not cured this defect of pleading in the SAC, as he alleges the same deprivations. In his Opposition, Plaintiff states that he "stands on his argument as stated in the Second Amended Complaint" that those deprivations state a claim for deprivation of protected liberty interests. (ECF No. 32 at 4.) Accordingly, Plaintiff has once again failed to state a Fourteenth Amendment due process claim against any Defendant for the reasons set forth in the Court's prior Order of dismissal.

In addition to the finding in the prior Order of dismissal that Plaintiff failed to allege a liberty interest protected by the Fourteenth Amendment, the Court found that even if he could satisfy that requirement he still failed to state a due process claim. (ECF No. 23 at 13-16.) With respect to the denial of his request for urinalysis or testing or examination of the cup from which he was allegedly drinking, *Wolff* gives the inmates the right to present evidence subject to the qualification that "[w]hen prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." (*Id.* at 13-14, quoting *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992).) As the Court previously informed Plaintiff, to the extent he alleges Defendant Luna or other prison officials violated due process by failing to adhere to the regulations governing urinalysis or field testing of the paper cup, he fails to state a claim because prison regulations are "primarily designed to guide correctional officials in the administration of a prison" and are "not designed to confer rights on inmates." *Sandin*, 515 U.S. at 481-82; *see also Singleton v. Kernan*, No. 3:16-cv-2462-BAS-NLS, 2019 WL 142190, at *8 (S.D. Cal. Jan. 8, 2019) (collecting cases). The regulations Plaintiff cites are permissive, not mandatory, and did not require prison officials to test the contents of the cup or Plaintiff's urine, whether on their own or at Plaintiff's request. *See generally* 15 Cal. Code Reg. § 3290(b), (c) (providing that field testing "may be performed" and that urine samples "may be done" for certain specified reasons). Thus, Plaintiff has not alleged the regulations were violated in this case.

Plaintiff alleges Defendant Luna violated the *Wolff* requirement that a prisoner be provided with "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563. As set forth in the prior Order of dismissal, the RVR attached to the First Amended Complaint indicated that Defendant Luna provided Plaintiff with a narrative which stated that "[a]ll evidence was considered during this hearing and the preponderance of that evidence as described herein supports a GUILTY finding for violating Section 3016(a), with the specific act described as: 'Possession of Alcohol[.]'" (ECF No. at 14-15, citing Exhibit H to the First Amended Complaint.) Defendant Luna went on to explain why, contrary to Plaintiff's argument, testing of the alleged alcohol was not necessary and why possession of alcohol constituted a violation of applicable prison regulations. (*See id.*) Additionally, in a section captioned "EVIDENCE," Defendant Luna laid out the evidence used to support his finding of guilt, namely Defendant Alvarez's statements in the RVR and Plaintiff's statement. (*See id.*)

This is sufficient to satisfy the due process requirements in *Wolff*. In the prison setting all that is necessary to support disciplinary findings is "some evidence." *See Superintendent v. Hill*, 472 U.S. 445, 457 (1985). Luna's decision sufficiently explained why he reached the conclusion he did and listed the evidence upon which he relied in reaching it. Due process does not require more. *See Culbert v. Young*, 834 F.2d 624, 631 (7th Cir. 1987) ("With respect to each of the disciplinary reports, the question was whether the plaintiff did or did not do the things recited in the conduct report. In each instance, the only evidence contradicting the conduct report was plaintiff's own statement in his defense . . . . Because there is no mystery about [the decision-maker's] reasoning process," a brief statement of reasons and supporting evidence was sufficient).

In his Objections, Plaintiff contends it is improper to rely on any documents attached to the First Amended Complaint, including the RVR. (ECF No. 2.) Defendants argue in their Reply that it is proper to consider that document because Plaintiff referred to it in the SAC. (ECF No. 36 at 2.) The Court is permitted to consider documents incorporated by reference in the SAC in deciding a motion to dismiss under Rule 12(b)(6). *Tellabas, Inc.*

*v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirely, as well as other sources courts ordinarily examine when ruling on Rule 12(b)6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") Plaintiff incorporated the RVR in the SAC by reference to it as if it were attached to the SAC, using the same Exhibit designation, Exhibit H (*see* ECF No. 24 at 9-10), as he did when he attached it to the First Amended Complaint (*see* ECF No. 17 at 67-85).

For these reasons, as well as Plaintiff's failure to allege a protected liberty interest, Defendants' motion to dismiss Plaintiff's due process claims against all Defendants is **GRANTED**. Because Plaintiff has been informed of these defects of pleading and has failed to correct them, these claims are dismissed without further leave to amend.

**4. Eighth Amendment Claims**

Finally, Defendants move to dismiss Plaintiff's Eighth Amendment claim against Defendant Vizcarra based on his actions on February 18, 2018, but do not move to dismiss the Eighth Amendment claim against him based on the events of March 18, 2018. (ECF No. 28 at 21-22.)

Plaintiff alleges in the SAC that when he took a break during a visit to urinate, Defendant Vizcarra stopped him and ordered him to get completely naked, bend over, and spread his buttocks. (ECF No. 24 at 3.) When Plaintiff said he just needed to use the toilet and was not ending his visit, Defendant Vizcarra "suddenly became extremely aggressive and yelled at plaintiff, 'I said fucking strip out,'" and the other correctional officers in the area surrounded him. (*Id*.) Defendant Vizcarra "stepped extremely close to plaintiff and removed his baton and yelled angrily at plaintiff to 'strip out' as saliva flew out of his mouth and landed on plaintiff's face." (*Id*.) When Plainitff asked why he needed to get naked just to urinate, Defendant Vizcarra moved closer and, with their noses touching, yelled "with extreme aggression" to strip out, sending more saliva into Plaintiff's face, and he backed away and complied. (*Id*. at 4.)

/ / /

Defendant Vizcarra argues he did not use force against Plaintiff during the February 18, 2018 incident, and Plaintiff was not harmed or restrained in any way and was able to back away and exit the area. (*Id*.) Defendant Vizcarra contends he is entitled to qualified immunity because a reasonable officer in his position could not reasonably believe his actions violated Plaintiff's constitutional rights. (*Id*. at 23-24.)

Plaintiff contends in his Opposition that a malicious and sadistic use of force violates the Eighth Amendment even if there are no injuries. (ECF No. 32 at 5.) He states that the description of the events which he provided during his administrative appeal process, which mirror the allegations in the SAC, was limited by the space on the CDCR 602 form, which required him to "get to the point," and he provides additional factual allegations in his Opposition, including that Defendant Vizcarra grabbed Plaintiff and violently turned him around, leaned against Plaintiff's backside, and grabbed his right hand and twisted his right wrist, which was in a brace, causing Plaintiff pain. (*Id*. at 7, 9.) Plaintiff contends that in any case it was the spitting in his face which constituted the most egregious Eighth Amendment violation because it was so humiliating. (*Id*. at 7.) He also argues that he only needed to urinate, and Defendant Vizcarra, backed up by the five other correctional officers, bullied him into a full strip search, and he was only free to leave after the search, and if he is able to obtain the video of the incident it would show it in an egregious light. (*Id*. at 8-9.) He argues qualified immunity is inappropriate because the unconstitutionality of Defendant Vizcarra's conduct is apparent. (*Id*. at 9-10.)

Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they use force against an inmate, not "in a good faith effort to maintain or restore discipline," but "maliciously and sadistically for the very purpose of causing" the unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscious of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992), quoting *Whitley*, 475 U.S. at 327.

The allegations in the SAC do not plausibly allege Defendant Vizcarra violated Plaintiff's Eighth Amendment rights during the February 18, 2018 incident. Plaintiff alleges that although he wanted to urinate and return to the visiting area, Defendant Vizcarra ordered him to submit to a full strip search, and when Plaintiff objected, Defendant Vizcarra "suddenly became extremely aggressive and yelled at plaintiff, 'I said fucking strip out,'" and the other correctional officers in the area surrounded him. (ECF No. 24 at 3.) Defendant Vizcarra "stepped extremely close to plaintiff and removed his baton and yelled angrily at plaintiff to 'strip out' as saliva flew out of his mouth and landed on plaintiff's face." (*Id.*) When Plaintiff asked why he needed to get completely naked just to urinate, Defendant Vizcarra moved closer and, with their noses touching, yelled "with extreme aggression" to strip out, sending more saliva into Plaintiff's face. (*Id.* at 4.) Plaintiff states that he then backed away and complied. (*Id.*)

"An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38. There are no allegations in the SAC that Defendant Vizcarra used any force against Plaintiff or physically injured him in any manner, merely that Plaintiff felt humiliated by being yelled at for refusing to submit to the type of full strip search apparently reserved for inmates after a visit rather than using the bathroom during a visit. *DeMallory v. Cullen,* 855 F.2d 442, 444 (7th Cir. 1988) (holding that a correctional officer spitting on a prisoner does not violate the Eighth Amendment); *Zavala v. Barnik*, 545 F. Supp. 1051, 1059 (C.D. Cal. Apr. 8, 2008) ("[A] one-time incident of spitting, while certainly deplorable, does not rise to the level of a constitutional violation.") Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Eighth Amendment claim against Defendant Vizcarra regarding the February 18, 2018 incident.

With respect to the new allegations in Plaintiff's Opposition alleging that Defendant Vizcarra violently grabbed Plaintiff and twisted his braced wrist, the Court is unable to consider them in opposition to the motion to dismiss. *Schneider*, 151 F.3d at 1197. Furthermore, even were those allegations sufficient to state an Eighth Amendment claim,

Plaintiff did not present them in his administrative proceedings (*see* ECF No. 17 at 14), admits he did not do so (ECF No. 32 at 7), and has therefore failed to exhaust prison administrative remedies. Exhaustion of prison administrative remedies is a pre-filing prerequisite for bringing an Eighth Amendment claim. *Booth v. Churner*, 532 U.S. 731, 734 (2001) (holding that pre-suit exhaustion is mandatory for all prison conditions claims, including Eighth Amendment excessive force claims). Permitting Plaintiff leave to amend the SAC to include these allegations would result in dismissal for failure to exhaust, and amendment to augment the claim in this action would be futile. Plaintiff's Eighth Amendment claim against Defendant Vizcarra based on the events of February 18, 2018, is dismissed without leave to amend.

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) Plaintiff's First Amendment retaliation claims against Defendant Alvarez and Luna, Plaintiff's Eighth Amendment claim against Defendant Vizcarra arising from the events of February 18, 2018, and Plaintiff's Fourteenth Amendment Due Process claims against all Defendants. Because Plaintiff has been informed of the defects of pleading with respect to these claims and has been given an opportunity to amend to cure them but has failed to do so, or further amendment would be futile, the claims are **DISMISSED** without further leave to amend.

This action will proceed with the only remaining claims in the Second Amended Complaint, Plaintiff's First and Eighth Amendment claims against Defendant Vizcarra arising from the events of March 18, 2018.

**IT IS SO ORDERED**.

Dated: June 22, 2020

Hon. John A. Houston
United States District Judge